IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, | ELECTRONICALLY FILED<br>May 27 2022<br>U.S. DISTRICT COURT<br>Northern District of WV |
| Plaintiff, | |
| v. | Case No. 1:22-cv-46 (Kleeh) |
| INNOVATIVE INSURANCE SOLUTIONS LLC, | |
| and | |
| EMPLOYERS INNOVATIVE NETWORK ACQUISITION LLC, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

For its Complaint against Defendants Innovative Insurance Solutions LLC ("IIS") and Employers Innovative Network Acquisition LLC ("EINA" or, together with IIS, "Defendants"), Plaintiff Landmark American Insurance Company ("Landmark") states as follows:

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332.

## PARTIES

2. Landmark is an insurance company organized and existing under the laws of the State of New Hampshire with its principal place of business located in Atlanta, Georgia.

3. Upon information and belief, IIS is a West Virginia limited liability company whose members are all residents of the State of West Virginia.

4. Upon information and belief, EINA is a Delaware limited liability company whose members are all residents of the State of West Virginia.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S. C. § 1332(a)(1). There is complete diversity of citizenship between Landmark and Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and (3) because a substantial part of the events giving rise to the claims occurred in this District and each Defendant is subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### The Policy

7. Landmark issued Professional Liability Insurance Policy No. LHR784112 (the "Policy") to Defendants effective for the period from August 14, 2020 to August 14, 2021 (the "Policy Period"). A copy of the Policy is attached hereto as "Exhibit 1."

8. Subject to the Policy's terms, conditions, limitations, exclusions, and endorsements, the Policy provides coverage under an Insurance Agents and Brokers Professional Liability Coverage Section (the "IABPL Coverage Section").

9. Section A(1) of the Insuring Agreement of the IABPL Coverage Section states that Landmark will pay on behalf of the Insureds all sums that the Insureds become legally obligated to pay as "Damages" and associated "Claim Expenses" arising out of a negligent act, error or omission, "Advertising Liability" or "Personal Injury," even if the "Claim" asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services for others in the "Insured's" capacity as an "Insurance Agent and Broker;" provided that any:

1. "Claim" is first made against the "Insured" during the Policy Period, and reported to Landmark no later than sixty days after the end of the Policy Period;

2. negligent act, error or omission, "Advertising Liability" or "Personal Injury" took place in a covered territory;

3. negligent act, error or omission, "Advertising Liability" or "Personal Injury" took place after the "Retroactive Date" as shown in the Declarations.

(Ex. 1 at IABPL Coverage Section § I(A)(1).)

10. Section B of the Insuring Agreement of the IABPL Coverage Section states, in relevant part, that Landmark will have the right and duty to defend any "Claim" against an Insured seeking "Damages" to which this policy applies, even if any of the allegations of the "Claim" are groundless, false or fraudulent. (Ex. 1 at IABPL Coverage Section § I(B).)

11. "Claim" is defined in the Policy to mean, in pertinent part, "a written demand for monetary or non-monetary relief received by the Insured during the Policy Period, including the service of suit, or the institution of an arbitration proceeding." (Ex. 1 at IABPL Coverage Section § III(D).)

12. "Claim Expense" is defined in the Policy to mean, in relevant part, expenses incurred by Landmark or the Insured with Landmark's consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered Claims, whether paid by Landmark or the Insured with Landmark's consent. (Ex. 1 at IABPL Coverage Section § III(E).)

13. "Damages" is defined in the Policy to mean a "monetary judgment, award or settlement, including punitive or exemplary damages, except damages that are prohibited by law" but does not include "disputes over fees, deposits, commissions or charges for goods or services." (Ex. 1 at IABPL Coverage Section § III(F).)

14. The Policy does not apply to any Claim or Claim Expenses based upon or arising out of an act, error, omission, "Advertising Liability" or "Personal Injury" arising out of the rendering or failure to render professional services for "Professional Employer Organization (PEO) Services and Operations" (the "Designated Operations Exclusion"). (Ex. 1 at IABPL Coverage Section § II, as amended by Endorsement No. 1.)

15. The Policy does not apply to any Claim or Claim Expenses based upon or arising out of the commingling, conversion, misappropriation or defalcation of funds or other property, or the inability or failure to pay, collect, disburse or safeguard any funds held by an Insured (the "Commingling of Funds Exclusion"). (Ex. 1 at IABPL Coverage Section § II(O).)

16. The Policy does not apply to any Claim or Claim Expenses based upon or arising out of any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement (the "Contractual Liability Exclusion"). (Ex. 1 at IABPL Coverage Section § II(G).)

## The Underlying Action

17. On or about October 2, 2020, American Bituminous Power Partners, L.P. (the "Underlying Plaintiff") filed a lawsuit against Employers' Innovative Network, LLC ("EIN") and Vensure HR, Inc. ("Vensure HR"), Case No. CC-24-2020-C-136, in the Circuit Court of Marion County, West Virginia (the "Underlying Action"). A copy of the Complaint filed in the Underlying Action is attached hereto as "Exhibit 2."

18. The Underlying Plaintiff filed a First Amended Complaint that added EINA, Vensure Topco, LLC ("Vensure Topco"), Vensure Employer Services ("VES"), and IIS as defendants in the Underlying Action. A copy of the First Amended Complaint filed in the Underlying Action (the "Underlying Amended Complaint") is attached hereto as "Exhibit 3."

19. In the Underlying Action, the Underlying Plaintiff alleges that its claim "arises from professional employer organization (PEO) and human resources (HR) services" provided by the defendants pursuant to a Customer Service Agreement that it entered into with EIN in 2013 (the "Agreement"). (Ex. 3 ¶¶ 13, 18.)

20. The Underlying Plaintiff alleges that EINA "purchased EIN and its various related entities in September 2019" and that, under the Agreement, EIN agreed to "pay wages to the co-employees, administer the benefit plan, maintain personnel files and policies, and maintain workers' compensation and unemployment compensation coverages" on behalf of Plaintiff. (Ex. 3 ¶ 17.)

21. According to the Underlying Plaintiff, IIS did not disclose that it placed the Underlying Plaintiff's workers compensation coverage on a master policy or that it built in a margin that changed over time. (Ex. 3 ¶ 7.)

22. In the Underlying Action, the Underlying Plaintiff further alleges that the defendants "converted, diverted or otherwise misappropriated moneys belonging to [the Underlying Plaintiff], both through an accumulated credit amount or overage, and through systematic theft through service charges that were never disclosed, were obscured to avoid detection . . . ." (Ex. 3 ¶ 15.)

23. The Underlying Plaintiff alleges that the defendants misapplied the workers compensation provision of the Agreement, thereby resulting in overcharges, and withheld funds allegedly pursuant to the Federal Unemployment Tax Act, but deducted in excess of the defined limits. (Ex. 3 ¶¶ 35, 38.)

24. According to the Underlying Plaintiff, the defendants never advised it of a fee increase at any time during the pendency of the Agreement and that, during the seven-year

pendency of the Agreement, the defendants never disclosed "its profit-taking in the alleged flow-through services, such as payroll taxes and workers' compensation premiums, despite the provisions in the Agreement mandating notice." (Ex. 3 ¶¶ 22, 55-56.)

25. In the Underlying Action, the Underlying Plaintiff asserts the following causes of action against the defendants: (1) breach of contract; (2) tortious conversion; (3) unjust enrichment; (4) fraud; (5) breach of the duty of good faith and fair dealing; and (6) civil conspiracy. (Ex. 3 ¶¶ 83-154.)

26. The Underlying Plaintiff seeks to recover: (1) the return of all unlawfully converted and maintained moneys; (2) one and one-half percent of the unlawfully retained amount for each thirty day period that the unpaid balance remains outstanding; (3) punitive damages; (4) attorneys' fees and costs; (5) lost opportunity costs; and (6) pre-judgment and post-judgment interest. (Ex. 3 at 24.)

### Landmark's Coverage Position

27. On or about September 27, 2021, the Insureds tendered a draft of the Underlying Amended Complaint to Landmark for coverage under the Policy. That same day, Landmark appointed counsel to defend the Insureds in the Underlying Action pursuant to its right and duty to do so under the Policy.

28. On or about May 27, 2022, Landmark sent a letter to the Insureds in which it indicated that it had conducted a coverage investigation and concluded that there was no coverage for the Underlying Action under the Policy due to the application of the Designated Operations Exclusion, the Commingling of Funds Exclusion, and the Contractual Liability Exclusion. Landmark further stated that, although it had determined that there is no coverage for the Underlying Action under the Policy, out of an abundance of caution and subject to a complete

reservation of its rights under the Policy and at law including the right to withdraw from the defense in the future and to recoup "Claim Expenses" should it later be determined that there is no coverage for the Underlying Action under the Policy, Landmark would continue to defend the Insureds in the Underlying Action. A copy of the May 27, 2022 letter is attached hereto as "Exhibit 4."

### COUNT I – DECLARATORY JUDGMENT AS TO APPLICATION OF DESIGNATED OPERATIONS EXCLUSION

29.    Landmark hereby adopts by reference the allegations contained in paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30.    An actual, present, and justiciable controversy exists concerning whether the Designated Operations Exclusion bars coverage for the Underlying Action.

31.    Landmark requests that the Court declare that, pursuant to the application of the Designated Operations Exclusion, the Policy affords no coverage for the Underlying Action and, as such, Landmark is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

### COUNT II – DECLARATORY JUDGMENT AS TO APPLICATION OF COMMINGLING OF FUNDS EXCLUSION

32.    Landmark hereby adopts by reference the allegations contained in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.    An actual, present, and justiciable controversy exists concerning whether the Commingling of Funds Exclusion bars coverage for the Underlying Action.

34.    Landmark requests that the Court declare that, pursuant to the application of the Commingling of Funds Exclusion, the Policy affords no coverage for the Underlying Action and, as such, Landmark is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

## COUNT III – DECLARATORY JUDGMENT AS TO CONTRACTUAL LIABILITY EXCLUSION

35. Landmark hereby adopts by reference the allegations contained in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. An actual, present, and justiciable controversy exists concerning whether the Contractual Liability Exclusion bars coverage for the Underlying Action.

37. Landmark requests that the Court declare that, pursuant to the application of the Contractual Liability Exclusion, the Policy affords no coverage for the Underlying Action and, as such, Landmark is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

## PRAYER FOR RELIEF

WHEREFORE, Landmark prays that this Court enter an Order:

1. declaring that, pursuant to application of the Designated Operations Exclusion, the Policy affords no coverage for the Underlying Action and, as such, Landmark is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

2. declaring that, pursuant to the application of the Commingling of Funds Exclusion, the Policy affords no coverage for the Underlying Action and, as such, Landmark is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

3. declaring that, pursuant to the application of the Contractual Liability Exclusion, the Policy affords no coverage for the Underlying Action and, as such, Landmark is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

4. awarding Landmark its costs, expenses, and attorneys' fees; and

5. awarding Landmark all other relief that the Court deems just and equitable.

*/s/ Jared M. Tully*
Jared Tully
FROST BROWN TODD LLC
500 Virginia Street, Suite 1100
Charleston, West Virginia  25301
Telephone: (304) 345-0111
Facsimile:  (304) 345-0115
jtully@fbtlaw.com

Counsel for Plaintiff Landmark American Insurance Company
